UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**PHILLIP COLON MCNEAL,**          CASE NO.:

    **Plaintiff,**

v.

**CITY OF PERRY, FLORIDA,**

    **Defendant.**
_____/

## COMPLAINT

Plaintiff, PHILLIP COLON MCNEAL, hereby sues Defendant, CITY OF PERRY, FLORIDA, and alleges:

## NATURE OF THE ACTION

1. This is an action brought under 42 U.S.C. §1981 brought through 42 U.S.C. §1983 and Chapter 760, Florida Statutes.

2. This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs and interests, and for prospective injunctive relief. Jurisdiction of this Court is invoked pursuant 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1343 (civil rights claim jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, PHILLIP COLON MCNEAL, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class because of his race (black) and because he reported unlawful employment practices and was subject to retaliation thereafter.

4.      At all times pertinent hereto, Defendant, CITY OF PERRY, FLORIDA, has been organized and existing under the laws of the State of Florida.  At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above.  Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.      Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF FACTS

6.      Plaintiff, a black male, began his employment with Defendant in May 2013 and held the position of Supervisor over the Sanitation, Street and Recreation Department as of the date of his termination on September 1, 2021.

7.      Prior to his termination, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, including in pay, and is held to a different standard because of his race and was subjected to retaliation after opposing unlawful employment practices. Plaintiff was also subjected to a hostile work environment.

8.      The mistreatment has come at the hands of specifically but not limited to former City Manager Bob Brown (white), City Manager until January 2023, Taylor Brown (white) and Public Works Director (PWD), Chester McAfee (white).

9.      Historically, Plaintiff was subjected to derogatory comments about African-Americans, including direct racial slurs, and threatened in the workplace directly by a coworker's family member and thus, indirectly by the coworker, with no corrective actions taken by Defendant to protect Plaintiff.  Plaintiff was also paid differently than similarly situated white employees including but not limited to his white predecessors in his position and Defendant

2

refused to promote Plaintiff into the same position that prior white supervisors held as Superintendents, rather than Supervisors.

10. By 2016, Plaintiff had reported internally within Defendant race discrimination during his employment including racial slurs being used in the workplace. That same year, Plaintiff filed a charge of discrimination against Defendant and he filed a lawsuit on the basis of race discrimination and retaliation in 2018.

11. During the course of that lawsuit, after depositions were taken and this case was proceeding to trial, in retaliation for the filing of his charge of discrimination and lawsuit and in continued disparate treatment due to his race, he was wrongfully terminated on September 1, 2021 on contrived allegations as discussed below after a lengthy period of ongoing race discrimination and retaliation.

12. When the lawsuit was filed on January 2, 2018, Bob Brown was the City Manager and Barney Johnson was Public Words Director, and thus, Plaintiff's supervisor. However, by around April, 2018, Chester McAfee had replaced Johnson in that position and McAfee held the Public Works Director position up until the date that Plaintiff was fired.

13. At some point in the middle part of 2018, Bob Brown asked Plaintiff what he was going to do about the lawsuit. After a brief conversation, and Plaintiff telling Bob Brown that he was not going to drop the lawsuit, Bob Brown told him that he might get a little money but that there would be consequences. He also told Plaintiff that the "insurance company" may want Plaintiff to be fired. Brown was clearly angry after Plaintiff said he would "take his chances."

14. Bob Brown left as the City Manager around September 2018 and was replaced by Taylor Brown as the City Manager around that same time. McAfee was still in the PWD

position and after Bob Brown left the employment of the Defendant, Plaintiff's employment worsened and he was subjected to a continuous pattern of harassment culminating in his termination.

15. Under Taylor Brown and McAfee, Plaintiff's authority was undermined. As part of the pattern of continuous harassment of Plaintiff, beginning in the 2019 time period, Taylor Brown allowed employees under Plaintiff's supervision to make unilateral decisions without consulting Plaintiff which adversely affected Plaintiff's job duties. This caused Plaintiff's employees to tell him that they were not going to listen to him as their supervisor and eroded Plaintiff's ability to control his workers, over time. Plaintiff had the position of Supervisor but not the authority.

16. This occurred continuously over time from 2019 until he was fired and subordinate employees were permitted to go directly to McAfee, Plaintiff's supervisor, for employment matters that should have come to Plaintiff and he was excluded from decisionmaking involving his employees including decisions about whether they were disciplined or not.

17. As a specific example of the decisions that were subverted and redirected to McAfee and others rather than Plaintiff, in 2019, Plaintiff recommended that his department go to one person sanitation trucks for safety reasons. Plaintiff approached McAfee and Brown about the purchase on these trucks but was excluded from all decisionmaking about the trucks. Instead, J.L. Lee, from the Water Department within the City, participated in the negotiation and purchase of the trucks for Plaintiff's Department. Lee, who is white, was sent to Tampa to purchase the trucks notwithstanding the fact that he knew nothing about these trucks and had

never driven them. Plaintiff was well aware of these trucks and the operation thereof because of his past experience driving them during his prior employment in Tifton, Georgia. Plaintiff was excluded entirely from the purchase of these trucks for his Department which was entirely Plaintiff's idea to begin with.

18. In the 2019 through 2021 time period, additional duties also began to be added to Plaintiff's description which significantly increased Plaintiff's responsibilities without an increase in pay and no additional personnel. Plaintiff was the only Black supervisor who ever worked for the Defendant, other than a Black worker who held the position of lead worker and/or Supervisor in Plaintiff's Department for a limited time.

19. Between 2019 and 2021, white Department Superintendents did not have added job duties and were paid more than Plaintiff although Plaintiff was performing more job duties than they were.

20. During the middle of Plaintiff's lawsuit that was pending in Circuit Court in Taylor County, on June 17, 2020, Taylor Brown called Plaintiff into his office and said he wanted to talk about the lawsuit Plaintiff had against the City. He told Plaintiff that there were four options: (1) drop the lawsuit so that they could be on even ground; (2) take his lawsuit to the Judge who may drop his case because he may not have enough to pursue it; (3) settlement for money but the insurance company may want him to resign or be terminated but that would be up to the insurance company; and (4) go to trial and "win a settlement" in which "you keep your job and probably be treated worse by the employees and others and probably be ostracized." He told Plaintiff that a lot of people working for the City were afraid to say anything around him due to his lawsuit.

21.     Into the 2021 time period, employees who were subordinate to Plaintiff were still permitted to go around Plaintiff and talk directly to McAfee about their job duties, thus ignoring Plaintiff as their supervisor. They were also allowed to challenge any directive given to them by Plaintiff including disciplinary actions, which were all handled by McAfee rather than Plaintiff. This was in direct contrast to the way that other Department Superintendents were allowed to make decisions in their Departments and to discipline their employees without McAfee's involvement.

22.     By way of example, Plaintiff's Crew Leader, Ben Davis, was required to complete paperwork in Plaintiff's absence. Around ten times, Plaintiff went to McAfee about Davis' refusal to complete the job duties that were assigned by Plaintiff in his absence. In fact, when Plaintiff was on vacation or otherwise out of the office, he had to return to complete paperwork that Davis was responsible for in Plaintiff's absence. McAfee never required Davis to perform the job duties assigned by Plaintiff.

23.     As another example of McAfee and Taylor undermining Plaintiff's authority, in November, 2020, Plaintiff attempted to discipline three employees for disrupting a neighborhood by being there too early in the morning. McAfee and Taylor refused to allow Plaintiff to discipline these employees even though they violated direct orders by Plaintiff and violated a City Ordinance. The continued refusal to back Plaintiff and not allow him to discipline his employees eroded his ability to tell his employees what to do and when they did what they wanted, including violating City policies and Ordinances, Plaintiff was neutered in his ability to take any action against them.

24. Plaintiff was also threatened with disciplinary action on more than one occasion by both McAfee and Taylor Brown on false allegations. They also solicited false statements about Plaintiff to justify his termination.

25. On one occasion in February, 2021, at least one employee, Joseph Salmon, asked another employee, Isaiah Carter, to write false statements about Plaintiff being a bad supervisor. Upon information and belief, Chester McAfee asked Salmon to get Isaiah Carter to write this false statement about Plaintiff, which Carter refused to do. Another employee heard this conversation between Carter and Salmon and stated at the time that "they were trying to get rid of [Plaintiff]." Plaintiff's lawsuit was still pending at the time.

26. In 2018 or 2019, Plaintiff reported to McAfee and Taylor Bronn that a white customer has threatened to shoot him. Plaintiff had been given the job to go onto this white customer's property for code enforcement purposes but the customer said he was going to shoot that "big black man" if he came back on his property.

27. In June 2021, Plaintiff was sent back to this customer's property. Plaintiff told both McAfee and Bobby Counce, the Code Enforcement Officer, that he was afraid to go back on this customer's property because of the prior threat to shoot him. McAfee and Counce made him go the property notwithstanding the threat. The front office secretary with Defendant even wrote on the properly location map "Be _careful_ at this location!!"

28. On July 27, 2021, McAfee wrote to Taylor Brown and recommended that Plaintiff be fired for failing to meet with his Department as a "whole because he would not handle and explain the policies as well." He was also accused of harassing an employee for "unknown reasons."

7

29. These allegations are false. Plaintiff had requested on multiple occasions that certain of his employees be written up or fired but was not permitted to take these disciplinary actions. Additionally, Plaintiff frequently, every Wednesday, met with his entire Department and talked about rules, policies and regulations, changes to the policies and work assignments. Further, there was never a time that Plaintiff harassed any employee. Ben Davis, a subordinate employee, who was one of the employees who was going around Plaintiff to McAfee, accused Plaintiff of yelling at him. Davis told Plaintiff not to ever call him on his telephone but to talk to him on the radio. Plaintiff asked Davis to perform a job and Davis got mad and falsely reported that Plaintiff yelled at him to McAfee. McAfee, Plaintiff and Davis talked about this and they ended the conversation with a conciliatory tone in which no disciplinary actions were threated or discussed. However, McAfee recommended to fire Plaintiff, in part, because of this incident.

30. On September 1, 2021, Taylor Brown told Plaintiff and another PWD employee, Joe Demps, that they were doing a good job and that they were "some good workers." He said "keep up the good work, keep up the good work."

31. That same day, Plaintiff was fired by McAfee and Taylor Brown. This was within months of Plaintiff filing his response in opposition to Defendant's Motion for Summary Judgment in state court and after hearings were being scheduled and rescheduled in his pending state court case.

32. Plaintiff was not told at the time why he was being fired. However, after his termination and his charge of discrimination was filed with the EEOC on his termination, Plaintiff learned that the Defendant was accusing him of stalking Ben Davis. Plaintiff was never asked about stalking Ben Davis and could have easily proven that this allegation was false.

33. In fact, Plaintiff has been told by coworkers that Ben Davis was solicited by McAfee and/or Taylor Brown to make up allegations to fire Plaintiff.

34. Plaintiff maintains that the actions taken against him were motivated by either his race or in retaliation for filing and/or maintaining his state court lawsuit alleging race discrimination and retaliation.

35. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## RACE DISCRIMINATION

36. Paragraphs 1 through 35 are re-alleged and incorporated herein by reference.

37. This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statutes.

38. Plaintiff has been the victim of discrimination on the basis of Plaintiff's race in that Plaintiff was treated differently than similarly situated employees of Defendant who are white and has been subject to poor treatment on the basis, at least in part, of Plaintiff's race.

39. Defendant is liable for the differential treatment of Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

9

40. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

41. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to adverse actions against Plaintiff as described more fully above.

42. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of Chapter 760, Florida Statutes.

43. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief including reinstatement.

## COUNT II
## VIOLATION OF 42 U.S.C. §1981 BROUGHT THROUGH 42 U.S.C. §1983 FOR RACE DISCRIMINATION

44. Paragraphs 1 through 35 above are incorporated herein by reference. This count is pled in the alternative.

45. This count sets forth a claim against Defendant for violations of Plaintiff's rights under 42 U.S.C. §1981 brought through 42 U.S.C. §1983. These violations were of the type and character as to which any reasonable person would be aware. Defendant is a person under the laws applicable to this count.

46. Defendant acted to violate Plaintiff's right to be free from race discrimination under 42 U.S.C. §1981, actionable under 42 U.S.C. §1983, in that he was treated differently from other similarly situated white employees by a state actor in the absence of any rational basis for such differential treatment.

47. Plaintiff has been, as set forth in part above, singled out for mistreatment which has led to Plaintiff's termination, as described in part herein, which have not happened to other similarly situated white men and women, and otherwise treated by Defendant in a differential and less favorable manner as compared to similarly situated white employees, without a rational basis for such denial and differential treatment.

48. The actions taken against Plaintiff, i.e., Plaintiff's termination, as set forth above, were taken by Defendant through Taylor Brown and McAfee, both of whom were final policymakers for the Defendant in the actions that they took against Plaintiff. Alternatively, Taylor Brown approved the decision/recommendation to fire Plaintiff under circumstances in which he knew that Plaintiff's race was a factor.

49. Defendant participated in a custom, policy and practice of singling Plaintiff out for disparate treatment on the basis of his race as set forth in part above.

50. Additionally, Defendant, after notice of the violations alleged herein, officially sanctioned these actions by refusing to discipline the officers, employees and agents, which sanctions and refusals established one or more policies, by final policymakers, primarily Taylor Brown and McAfee, that directly or indirectly resulted in the violation of Plaintiff's rights.

51. Additionally, as a final policymaker for Defendant, after the recommendation to fire Plaintiff was made to Taylor Brown, he rubberstamped the recommendation by McAfee to

fire Plaintiff. The actions by Defendant occurred under color of state law, and is actionable under 42 U.S.C. §1983.

52. All persons who took action against Plaintiff as identified herein were delegated final policymakers in the adverse actions affecting Plaintiff including Taylor Brown and McAfee.

53. As a direct and proximate result of Defendant's actions, set forth in part above, Plaintiff has been injured and suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, along with other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue into the future. Plaintiff is entitled to injunctive relief including reinstatement.

## COUNT III
## RETALIATION

54. Paragraphs 1 through 35 are re-alleged and incorporated herein by reference.

55. Defendant is an employer as that term is used under Chapter 760, Florida Statutes.

56. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting him under Chapter 760, Florida Statutes.

57. The foregoing unlawful actions by Defendant were purposeful.

58. Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and was the victim of retaliation thereafter, as related in part above. The events set forth herein lead, at least in part, to adverse employment actions against Plaintiff including without limitation his termination.

59. Plaintiff is a member of a protected class because he reported unlawful employment practices and was the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

60. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive/equitable relief including reinstatement.

## COUNT IV
## VIOLATION OF 42 U.S.C. §1981 BROUGHT THROUGH 42 U.S.C. §1983 FOR RETALIATION

61. Paragraphs 1 through 35 above are incorporated herein by reference. This count is pled in the alternative.

62. This count sets forth a claim against Defendant for violations of Plaintiff's rights under 42 U.S.C. §1981 brought through 42 U.S.C. §1983 to be free from retaliation after Plaintiff reported discrimination. These violations were of the type and character as to which any reasonable person would be aware. Defendant is a person under the laws applicable to this count.

63. Defendant acted to violate Plaintiff's right to be free from retaliation under 42 U.S.C. §1981, actionable under 42 U.S.C. §1983, in that he was treated differently from other employees who did not report, complain about discrimination or file a lawsuit claiming discrimination and retaliation.

64. Plaintiff has been, as set forth in part above, singled out for mistreatment which has led to Plaintiff being thwarted in the performance of his job duties and then fired which actions and events not happened to other similarly situated persons who did not report race discrimination and has been otherwise treated by Defendant in a differential and less favorable manner as compared to persons who did not report race discrimination, without a rational basis for such denial and differential treatment. Defendant, through either and/or both Taylor Brown and/or McAfee, were the final policymakers regarding all actions taken against Plaintiff that are complained of herein.

65. The actions taken against Plaintiff, i.e., Plaintiff's termination, as set forth above, were taken by Defendant through Taylor Brown and McAfee, both of whom were final policymakers for the Defendant in the actions that they took against Plaintiff. Alternatively, Taylor Brown approved the decision/recommendation to fire Plaintiff under circumstances in which he knew that Plaintiff's race was a factor.

66. Additionally, as a final policymaker for Defendant, after the recommendation to fire Plaintiff was made to Taylor Brown, he rubberstamped the recommendation by McAfee to fire Plaintiff. The actions by Defendant occurred under color of state law, and is actionable under 42 U.S.C. §1983.

67. Plaintiff has been, as set forth in part above, singled out for mistreatment, was otherwise treated in a differential and less favorable manner as compared to similarly situated white men and women, without a rational basis. The actions taken against Plaintiff, set forth in part above, were taken by Defendant through its officers and supervisors, identified in part

above, all of whom were final policymakers for the Defendant in the actions that they took against Plaintiff.

68. Defendant participated in a custom, policy and practice of singling Plaintiff out for disparate treatment because of his reports of discrimination as set forth in part above. Additionally, Defendant's supervisors and managers, after notice of the violations alleged herein, officially sanctioned these actions by refusing to discipline the officers, employees and agents, which sanctions and refusals established one or more policies, by final policymakers, primarily Taylor Brown and McAfee, that directly or indirectly resulted in the violation of Plaintiff's rights.

69. As a direct and proximate result of Defendant's actions, set forth in part above, Plaintiff has been injured and suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, along with other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue into the future. Plaintiff is entitled to injunctive relief including reinstatement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendant and for Plaintiff permanently enjoining Defendants from future violations of law enumerated herein;

(e)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)     award Plaintiff interest where appropriate; and

(g)     grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated this 21st day of November, 2022.

                                                              Respectfully submitted,

                                                               /s/ Marie A. Mattox
                                                               Marie A. Mattox [FBN 0739685]
                                                               MARIE A. MATTOX, P. A.
                                                               203 North Gadsden Street
                                                               Tallahassee, FL 32301
                                                               Telephone:  (850) 383-4800
                                                               Facsimile:   (850) 383-4801

                                                               ATTORNEYS FOR PLAINTIFF